GRIMES, Judge.
This case involves an interpretation of when the local option provisions of Fla. Stat. § 447.603 (1974) come into play.
On December 23, 1974, the Fraternal Order of Police, Local No. 38, filed with the Public Employees Relations Commission (PERC) a petition for certification as the bargaining agent of the policemen of the City of Naples. The Professional Firefighters of Naples, No. 2174, filed with PERC a certification petition with respect to the Naples firemen on April 11, 1975. On May 7, 1975, the City of Naples passed a local option ordinance under Fla.Stat. § 447.603 (1974) which established its own provisions and procedures for a public employees relations commission. The ordinance specified May 13, 1975, as its effective date. On May 13, 1975, the city filed with PERC an application for review and approval of the ordinance.
The city then took the position that jurisdiction over the public employees bargaining process had been transferred to the city upon the passage of the ordinance and the filing with PERC of the application for review. Thereupon, PERC sought to enjoin the city from enforcing or implementing its ordinance until its terms had been approved by PERC. The court ultimately entered an order denying PERC’s application for injunction, and PERC has appealed this order.
The 1968 Constitution included a provision which gave public employees the right to engage in collective bargaining. This right was implemented by the legislature in the passage of the Tucker Act (Part II of Chapter 447) in 1974. This act established a Public Employees Relations Commission to supervise the collective bargaining process. However, Fla.Stat. § 447.603 (1974) provided:
“447.603 Local option. — Any district school board or political subdivision, other than the state or a state public authority, may elect to adopt, by ordinance, resolution, or charter amendment its own provisions and procedures in lieu of the requirement of this part, provided such provisions and procedures effectively secure to public employees substantially equivalent rights and procedures as set forth in this part. Prior to [such provisions and procedures] becoming law, the public employer shall apply to the commission for review and approval as to whether local provisions or procedures, or both, are substantially equivalent to the provisions and procedures set forth in this part. All public employee agreements now in existence shall remain in effect until their expiration.”
Thus, the issue boils down to whether PERC’s approval of the provisions and procedures established by the city’s ordinance is required before the city is entitled to assume jurisdiction of the public employees bargaining procedure.
The city argues that the statute doesn’t specifically say that PERC’s approval is a condition precedent to the effectiveness of the ordinance. The city suggests that the legislature simply intended that PERC would act as a watchdog whereby it would have the right to attack in the courts any local ordinance deemed to be insufficient. On the other hand, PERC points to the fact that the statute requires the public employer to apply to “the commission for review and approval” of its provisions and procedures. PERC suggests that to adopt the city’s position would permit a local entity to pass an ordinance establishing any kind of provisions or procedures and to place the burden upon PERC to seek to have it set aside.
*43 On balance, we are persuaded that PERC’s position must prevail. It is obvious that the Tucker Act represents the result of a comprehensive effort to establish an orderly process for the administration of collective bargaining with public employees. There are detailed provisions for determining the employee organization which is entitled to act as bargaining agent for each bargaining unit, and there is a method provided to handle charges of unfair labor practices. Many of the procedures appear to be similar to those followed in labor matters on the federal level. In this complex area of the law, it is important to have reasonably consistent interpretations. Therefore, if public employee relations are in some instances to 'be supervised on the local level, logic dictates that from the outset the procedures to be followed should be substantially similar to those employed by PERC.
The city contends that its position is consistent with the decentralization philosophy expressed by the constitutional and legislative “Home Rule” provisions. However, Article VIII, Section 2(b) of the Florida Constitution establishes a grant of powers to municipalities “except as otherwise provided by law,” and Fla.Stat. § 166.021(3) (c) (1973) provides that municipalities may enact legislation upon any subject matter except those “expressly preempted to state . . . government . by general law.” We believe that by the passage of the Tucker Act the legislature has seen fit to preempt to the state the subject of public employee bargaining to the extent that a municipality can have no jurisdiction unless the provisions and procedures of its ordinance have been approved by PERC. The Circuit Court of the Fourteenth Judicial Circuit recently reached a similar conclusion in Police Benevolent Association v. The Municipality of Panama City, Florida, Case No. 74-1363, Order entered September 5, 1975.
We note the city’s contention that PERC’s interpretation of the statute would result in an unconstitutional infringement upon the power of the judicial branch of government by permitting PERC, an administrative body, to pass upon the propriety of the city’s legislative enactment. The delegation of the responsibility for determining whether local standards are equivalent to those enacted by the legislature does not appear to us as such an infringement, especially in light of the availability of judicial review of the administrative determination. However, we do not reach the constitutionality of the statute, itself, a question not passed upon by the lower court.
Reversed and remanded.
HOBSON, A. C. J., and SCHEB, J., concur.